# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAUDE BEAUREGARD,<br><br>              Plaintiff,<br><br>   v.<br><br><br><br>U.S. CONCRETE, INC., MICHAEL D. LUNDIN, SUSAN M. BALL, KURT M. CELLAR, RAJAN C. PENKAR, RONNIE PRUITT, THEODORE P. ROSSI, AND COLIN M. SUTHERLAND,<br><br>              Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Claude Beauregard ("Plaintiff") by and through Plaintiff's undersigned attorneys, brings this action on behalf of Plaintiff, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by U.S. Concrete, Inc. ("U.S. Concrete" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning U.S. Concrete and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against U.S. Concrete and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of the Company by Vulcan Materials Company ("Vulcan") and its affiliates (the "Proposed Transaction").

2. On June 6, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Vulcan. Pursuant to the terms of the Merger Agreement the Company's shareholders will have the right to receive $74.00 in cash per share of U.S. Concrete owned (the "Merger Consideration").

3. On July 13, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against U.S. Concrete and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to U.S. Concrete shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, the owner of U.S. Concrete shares.

9. Defendant U.S. Concrete is incorporated under the laws of Delaware and has its principal executive offices located at 331 N. Main Street, Euless, Texas 76039. The Company's common stock trades on the NASDAQ under the symbol "USCR."

10. Defendant Michael D. Lundin ("Lundin") is and has been the Chairman of the Board of U.S. Concrete at all times during the relevant time period.

11. Defendant Susan M. Ball ("Ball") is and has been a U.S. Concrete director at all times during the relevant time period.

12. Defendant Kurt M. Cellar ("Cellar") is and has been a U.S. Concrete director at all times during the relevant time period.

13. Defendant Rajan C. Penkar ("Penkar") is and has been a U.S. Concrete director at all times during the relevant time period.

14. Defendant Ronnie Pruitt ("Pruitt") is and has been the President, Chief Executive Officer ("CEO") and a director of U.S. Concrete at all times during the relevant time period.

15. Defendant Theodore P. Rossi ("Rossi") is and has been a U.S. Concrete director at all times during the relevant time period.

16. Defendant Colin M. Sutherland ("Sutherland") is and has been a U.S. Concrete director at all times during the relevant time period.

17. Defendants Lundin, Ball, Cellar, Penkar, Pruitt, Rossi and Sutherland are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant U.S. Concrete, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. U.S. Concrete is a leading supplier of aggregates and concrete for infrastructure, residential and commercial projects across the country. U.S. Concrete holds leading positions in the high-growth metropolitan markets of Dallas/Fort Worth, San Francisco, New York City, Philadelphia, and Washington, D.C., and its materials have been used in some of the most complex and highly specialized construction projects of the last decade. U.S. Concrete has continued to grow organically and through a series of strategic acquisitions of independent producers.

**The Company Announces the Proposed Transaction**

20. On June 7, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

BIRMINGHAM, Ala. and EULESS, Texas, June 7, 2021 /PRNewswire/ -- Vulcan Materials Company (NYSE: VMC), a leading producer of construction aggregates, and U.S. Concrete, Inc. (NASDAQ: USCR), a leading supplier of aggregates and ready-mixed concrete, today announced that they have entered into a definitive merger agreement. Under the terms of the agreement, Vulcan will acquire all of the issued and outstanding shares of U.S. Concrete common stock for a purchase price of $74.00 per share in cash, which represents a total equity value of $1.294 billion. The transaction has been unanimously approved by the boards of directors of both companies and is expected to close in the second half of 2021, subject to U.S. Concrete shareholder approval, regulatory clearance, and other customary closing conditions.

Headquartered in Euless, Texas, U.S. Concrete operates in large, attractive metropolitan areas that complement Vulcan's existing footprint. With 27 aggregates operations serving California, Texas and the Northeast, that shipped 12.6 million tons in 2020, the acquisition of U.S. Concrete's portfolio represents a natural addition to Vulcan's business. The transaction also provides strategically oriented ready-mixed concrete operations that will expand Vulcan's service capabilities. Other highlights include:

- Complements Vulcan's existing aggregates business in California with access to blue-water source of high quality aggregates reserves;
- Enhances Vulcan's position in key Texas growth areas;
- Expands Vulcan's aggregates footprint, including in the attractive New York and New Jersey metropolitan areas;
- Expected to increase Vulcan's EBITDA by approximately $190 million before synergies; and,
- Expected to be accretive to Vulcan's earnings per share in the first full year following closing.

Tom Hill, Chairman and CEO of Vulcan Materials Company, said, "U.S. Concrete is an important Vulcan customer in a number of key areas, and this transaction is a logical and exciting step in our growth strategy as we further bolster our geographic footprint. Ronnie Pruitt and his team have done an excellent job growing and operating its business, and we look forward to welcoming the U.S. Concrete employees to the Vulcan family. This is a merger of two corporate cultures that value people, technology, operating disciplines, customer service and the entrepreneurial spirit, and it positions Vulcan to further drive sustainable, long-term shareholder value."

...

Ronnie Pruitt, President and CEO of U.S. Concrete added, "Today's announcement that we are combining with Vulcan, a leading producer of construction aggregates, marks a major milestone in U.S. Concrete's history. We are proud of the work our team has accomplished over the past few years to achieve operational excellence and serve our customers and believe combining with Vulcan will provide us with the opportunity to build on our progress. Our combined organization will share an extensive and successful track record of acquisitions and greenfield development, and we look forward to working with Tom and the entire Vulcan family to close this transaction and integrate our two strong businesses."

The Greystone Group is serving as financial advisor to Vulcan. Truist Securities, Inc. is serving as sole lead arranger on committed financing to Vulcan. Wachtell, Lipton, Rosen & Katz and Bradley Arant Boult Cummings LLP are serving as legal counsel to Vulcan. Evercore and BNP Paribas Securities Corp. are serving as financial advisors to U.S. Concrete. Gibson, Dunn & Crutcher, LLP and Akin Gump Strauss Hauer & Feld LLP are serving as legal counsel to U.S. Concrete.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

21. On July 13, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

23. The Proxy Statement contains projections prepared by the Company's and Vulcan's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

26. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

28. The Proxy Statement contains the financial analyses and opinion of Evercore Inc. ("Evercore") and BNP Paribas Securities Corp. ("BNP") concerning the Proposed Transaction, but fails to provide material information concerning such.

29. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

30. With respect to Evercore's *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

31. With respect to Evercore's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for U.S. Concrete; (ii) the inputs and assumptions underlying Evercore's use of the perpetuity growth rates of 2.25% to 3.25%; (iii) the inputs and assumptions underlying Evercore's use of the discount rates ranging from 9.0% to 10.0%, (iv) the Company's net debt; and (v) the number of fully diluted shares of U.S. Concrete common stock outstanding.

32. With respect to Evercore's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying

Evercore's use of the EV/NTM Adjusted EBITDA multiple range of 7.0x to 8.5x; (ii) the Company's estimated net debt; (iii) the number of estimated fully diluted shares of U.S. Concrete common stock outstanding; and (iv) the inputs and assumptions underlying Evercore's use of the illustrative discount rate of 13.0%.

33. With respect to Evercore's *Illustrative Sponsor Ability to Pay Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Evercore's use of a required internal rate of return in the range of 17.5% to 22.5%; (ii) the inputs and assumptions underlying Evercore's use of a total leverage ratio of 5.5x to the Company's estimated LTM Adjusted EBITDA as of March 31, 2021; (iii) the basis for Evercore's application of exit multiples in the range of 7.5x to 9.0x to the Company's estimated 2025 LTM Adjusted EBITDA.

34. With respect to Evercore's *Equity Research Analyst Price Targets*, the Proxy Statement fails to disclose the price targets reviewed by Evercore, as well as the sources thereof.

35. With respect to BNP's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for U.S. Concrete; (ii) the inputs and assumptions underlying BNP's use of perpetuity growth rates of 2.5% to 3.0%; (iii) the inputs and assumptions underlying BNP's of discount rates ranging from 8.7% to 9.4%; (iv) the Company's net debt as of June 1, 2021; and (v) the number of fully diluted shares of U.S. Concrete common stock outstanding.

36. With respect to BNP's *Comparable Trading Multiples* analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

37. With respect to BNP's *Precedent Transaction Multiples* analysis for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

39. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)  
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

45. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

46. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

51. The Individual Defendants acted as controlling persons of U.S. Concrete within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of U.S. Concrete, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

54. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated

in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 30, 2021                                          Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*